BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6831
Laura.Vartain@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JESSICA SCOTT,<br>Defendant. | NO. 15-514 CRB<br>UNITED STATES' SENTENCING MEMORANDUM<br>Hearing: 10:00AM<br>Date: July 5, 2017 |

## I. INTRODUCTION

As an employee of Covenant Aviation Services (CAS),[1] defendant Jessica Scott was responsible for passenger and baggage screening services at San Francisco International Airport (SFO), and therefore for ensuring the safety and security of passengers, both in the secure section of the airport and on the airplane. Rather than conduct proper screening of certain bags, defendant permitted bags with cocaine and simulated cocaine to pass through her security checkpoint undetected. Defendant admits that the drugs appeared on her x-ray machine as possible explosives. These actions were part of a drug trafficking organization that relied on the corruption of security screeners, including defendant. For the reasons discussed below, the government recommends a sentence of 51-months, which is the low-end of the applicable Guidelines range, together with a three-year term of supervised release and a mandatory $100 special assessment.

## II. OFFENSE CONDUCT AND SENTENCING GUIDELINES RANGE

### A. Offense Conduct

The PSR accurately summarizes the key facts, and the government will not repeat them in detail here, and instead highlights a few key aspects of the offense conduct. In short, defendant's conduct was part of a larger drug trafficking and corruption scheme. Defendant was a Transportation and Security Officer (TSO) at SFO, and she permitted cocaine and simulated cocaine to pass through her security checkpoint on May 16, 2013, June 7, 2013, and July 18, 2013. At the time, defendant was married to Joseph Scott, a supervisory TSO. *See* PSR ¶ 7.[2] Bobby Napier pleaded guilty to five instances of bribing Joseph Scott; on three of those smuggling events, Jessica Scott manned the the x-ray machine. *Compare* PSR ¶¶ 9-13 and *United States v. Bobby Napier*, 14-337 CRB Dkt. 90 ¶ 2.

In her Plea Agreement, defendant admits that on July 18, 2013, she permitted a bag to pass through her security checkpoint even though the x-ray image showed three bright orange bricks and three bright green bricks, which, based on her training and experience, defendant knew appeared as

---

[1] The Transportation Security Administration (TSA) contracts with Covenant Aviation Services (CAS) to provide aviation security services for the passenger and baggage screening at SFO. CAS employees like Jessica Scott are public officials. (Dkt. 90 ¶ 2. PSR ¶ 6.)

[2] Although Joseph Scott was a supervisor, he did not supervise defendant because he did not work at the security checkpoint with her during the relevant time.

possible explosives. Dkt. 90 ¶ 2. TSA policy required a secondary check of such x-ray images. PSR ¶ 8. Defendant did not call for such a check, and defendant admitted that she allowed the drugs to pass through security because her husband, Joseph Scott told her that his "friend" was coming through security and that the bag was "good." *Id.* Defendant admits to being deliberately ignorant of the presence of cocaine in the bags. PSR ¶ 12.

**B. Guidelines Range**

**1. The Plea Agreement**

The parties agree as to the Sentencing Guidelines,[3] with one dispute. The government opposes a reduction of two points based on safety valve. Accordingly, consistent with the Plea Agreement, the government's calculation follows, and results in a Guidelines range that is two points higher than what defendant likely will urge the Court to follow.

<u>Count One (Conspiracy to Defraud the Government)</u>:

a. Base Offense Level U.S.S.G. § 2C1.1(a)(1) — 14

b. Adjusted Offense Level (Fraud) — 14

c. Adjusted Offense Level after Cross-Reference U.S.S.G. § 2C1.1(C)(1) (Offense was committed for the purpose of facilitating the commission of another criminal offense – i.e., conspiracy to distribute cocaine) — 24

<u>Cross-reference (Conspiracy to Distribute Cocaine):</u>

e. Base Offense Level U.S.S.G. § 2D1.1(a)(5), (c)(4) (5-15 kilograms of cocaine) — 30

f. Amount of drugs:

Cocaine — 6 kg

g. Safety valve — 0

[3] The PSR finds a higher base offense level than reflected in the Plea Agreement on the basis that defendant permitted cocaine and simulated cocaine totaling 17 kilograms to pass through her security checkpoints. Defendant has admitted to sufficient knowledge to establish criminal culpability with respect to only one of those instances, in which six kilograms passed through security, and so the government requests that the Court use that quantity for the purposes of calculating the Guidelines.

U.S.S.G. § 2D1.1(b)(17)
(If Probation finds that I meet the requirements of U.S.S.G. §5C1.2(a)(1)-(4) and the Government finds that I have truthfully debriefed with them within the meaning of 5C1.2(a)(1)(5).)

| | | |
|---|---|---|
| h. | Mitigating role | -3 |
| i. | Adjusted Offense Level | 27 |

<u>Combined Offense Level:</u>

| | | |
|---|---|---|
| j. | Offense Level after Mandatory Grouping<br>U.S.S.G. § 3D1.2(b) | 27 |
| k. | Acceptance of Responsibility:<br>If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing. | -3 |
| l. | Total Offense Level | 24 |

e. Adjusted Offense Level: 24

[redacted]

[Page content redacted]

## III. THE UNITED STATES' SENTENCING RECOMMENDATION

The United States recommends a sentence within the applicable Guidelines range for the following reasons.

First, the nature and circumstances of the offense and the severity of it warrant a sentence within the applicable Guidelines. Approximately two months after the terrorist attacks on September 11, 2001, Congress created TSA to ensure the security of aircraft and airports throughout the United States. *See* Aviation and Transportation Security Act, Pub. L. No. 107-71, § 101, 115 Stat. 597 (Nov. 19, 2001). As federal employees charged and entrusted with carrying out this mission, TSOs like defendant take an oath to support and defend the Constitution of the United States, to bear true faith and allegiance to the same, and to well and faithfully discharge their duties. These duties include the screening of all passengers and baggage for possible threats to security. Defendant admits that she deceitfully and dishonestly obstructed the lawful functions of the TSA when she permitted bags with cocaine and simulated cocaine to pass through her security checkpoint, even though she recognized that these appeared like explosives and warranted a secondary check.

As the PSR identifies, and as the Court recognized in a recent and related sentencing, *United States v. Napier*, 14-337 (CRB),[4] the public expects that security and safety result from TSA's screening function. The trade-off for the inconvenience of the enhanced security should be improved safety. In failing adequately to screen a bag with items that appeared as though they could be explosives, defendant compromised the public's safety and security.

As a result of her corrupt conduct, defendant permitted 17 kilograms to pass through her security checkpoint. Although defendant admitted to a quantity smaller than 17 kilograms and the Court should use that smaller quantity to calculate the Guidelines, the larger quantity at issue in this case is relevant

[4] For three of the five instances to which Napier pleaded guilty for bribing defendant Joseph Scott, Jessica Scott was the TSO operating the x-ray machine when the drugs passed through security.

under 18 U.S.C. § 3553(a) because it makes the nature and circumstances of the offense and the severity of it even more significant.

In addition to the public corruption aspect of the case, the amount of cocaine at issue is part of the troublesome nature and circumstances of the case. The scheme at the core of this case facilitated the movement of a significant quantity of a dangerous controlled substance, and the cross-reference of the bribery Guidelines to incorporate the drug offense appropriately considers that impact.

Second, there is a profound deterrent value in a sentence within the Guidelines. As a public official, defendant abdicated her responsibilities in order to facilitate a significant quantity of narcotics through security. A significant period of incarceration is necessary to deter other airport officials from facilitating the movement of drugs through passenger and baggage security at airports across the country, and to curb the movement of narcotics through our airports.

The government recognizes and appreciates the factors the PSR identifies as a basis for a variance. Specifically, the government finds defendant's lack of control over the quantity or substance of the drug relevant to sentencing. Unlike other TSA officials the Court will confront in these cases, there is no evidence that Jessica Scott had any connection to the drug trafficking organization itself. It is also relevant that the government does not have evidence of any benefit that accrued directly to Jessica Scott, as opposed to her then-husband, Joe Scott. The government incorporated these factors in to the Plea Agreement in several respects, including in the downward role adjustment. Having incorporated these factors into an agreement regarding the appropriate Guidelines range, the government does not agree with the PSR's recommendation for a downward variance based on the same factors. In balance, the nature and circumstances of the offense, including the frequency and impact of it, weigh in favor of a sentence within the applicable Guidelines.

//

//

//

//

//

//

## IV. CONCLUSION

For these reasons, the government recommends a sentence of 51 months, three years of supervised release, and a $100 special assessment.

BRIAN J. STRETCH
United States Attorney

Dated: June 28, 2017

/s
LAURA VARTAIN HORN
Assistant United States Attorney